HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
SONAM HENDERSON (Bar No. 301996)
(E-Mail: Sonam_Henderson@fd.org )
CUAUHTEMOC ORTEGA (Bar No. 257443)
(E-Mail: Cuauhtemoc_Ortega@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone:  (213) 894-2854
Facsimile:  (213) 894-0081

Attorneys for Defendant
JAMES ROBERT MILLER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>   v.<br><br>JAMES ROBERT MILLER,<br><br>           Defendant. | Case No. CR 14-0471-GW<br><br>**DEFENDANT'S PROPOSED JURY INSTRUCTIONS AND OBJECTIONS TO GOVERNMENT'S PROPOSED JURY INSTRUCTIONS** |

Defendant James Robert Miller, through his attorneys of record, Deputy Federal Public Defenders Sonam Henderson and Cuauhtemoc Ortega, hereby submits the following proposed jury instructions and objections to the government's proposed jury instructions.  Defendant's proposed instructions are followed by a memorandum of points and authorities explaining the nature of defendant's objection to the government's proposed instructions and citing authorities for defendant's proposed alternatives.

//

1    The defense respectfully requests leave to file such further requests for

2  additional instructions as may become appropriate in the course of pre-trial

3  proceedings and trial.

4                                    Respectfully submitted,

5                                    HILARY POTASHNER
                                     Federal Public Defender
6

7  DATED: November 15, 2016          By   /s/ Sonam Henderson

8                                    SONAM HENDERSON
                                     CUAUHTEMOC ORTEGA
9                                    Deputy Federal Public Defenders
                                     Attorney for Defendant

1
2

***INDEX***

3

| No. | Title of Instruction | Source of Instruction/Citations | Pg. |
|---|---|---|---|
| 1 | Reasonable Doubt - Defined | Manual of Model Criminal Jury Instructions for the Ninth Circuit, (2010 ed.); lA O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, §12.10 (6th ed. 2008); *Ramirez v. Hatcher*, 136 F.3d 1209 (9th Cir. 1998); *United States v. Velasquez*, 980 F.2d 1275 (9th Cir. 1992). | 2 |
| 2 | Elements of Wire Fraud | Manual of Model Criminal Jury Instructions for the Ninth Circuit (2010 ed.); *McNally v. United States*, 483 U.S. 350 (1987); *Cleveland v. United States*, 531 U.S. 12 (2000). | 4 |
| 3 | Proceeds of a Loan Not Taxable Income | *James v. United States*, 366 U.S. 213 (1961). | 10 |
| 4 | Wire Fraud as to Particular Victim | *United States v. Lew*, 875 F.2d 219 (9th Cir.1989); *Cleveland v. United States*, 531 U.S. 12 (2000). | 12 |

1

# I. DEFENDANT'S PROPOSED INSTRUCTIONS

## COURT'S INSTRUCTION NO. ___

### *DEFENSE PROPOSED INSTRUCTION NO. 1*

#### *(proposed alternative to United States Proposed Instruction No. 1)*

Proof beyond a reasonable doubt is proof that leaves you firmly convinced the defendant is guilty. It is not required that the government prove guilt beyond all possible doubt.

A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation. It may arise from a careful and impartial consideration of all the evidence, or from lack of evidence. Proof beyond a reasonable doubt must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs.

Unless the government proves, beyond a reasonable doubt, that the defendant has committed each and every element of the offenses charged in the superseding indictment, you must find the defendant not guilty of the offenses. If you view the evidence in the case as reasonably permitting either of two conclusions – one of innocence, the other of guilt – you must adopt the conclusion of innocence.

## MEMORANDUM OF POINTS AND AUTHORITIES

This proposed instruction is based in part on the Ninth Circuit's model jury instructions, *see* Manual of Model Criminal Jury Instructions for the Ninth Circuit, No. 3.5 (2010 ed.) [Reasonable Doubt - Defined], but modifies the model instruction to give the jury clearer guidance on the all-important concept of reasonable doubt, using language from O'Malley, Grenig & Lee, and case law. *See* lA O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, §12.10 (6th ed. 2008) [Presumption of Innocence, Burden of Proof, and Reasonable Doubt]; *Ramirez v. Hatcher*, 136 F.3d 1209, 1213 (9th Cir. 1998) ("this circuit has endorsed a definition of reasonable doubt as the kind of doubt that would cause a reasonable person to hesitate to act . . . , and the Supreme Court has indicated that 'the hesitate to act standard gives a common sense benchmark for just how substantial [a reasonable] doubt must be'" (quoting *Victor v. Nebraska*, 511 U.S. 1, 20-21 (1994))), cert. denied, 525 U.S. 967 (1998); *United States v. Velasquez*, 980 F.2d 1275, 1278 (9th Cir. 1992) (noting that some Ninth Circuit opinions have expressed a preference for the "'hesitate to act' language," though failure to use it is not necessarily reversible error), cert. denied, 508 U.S. 979 (1993).

**COURT'S INSTRUCTION NO. ___**

*DEFENSE PROPOSED INSTRUCTION NO.  2*

*(proposed alternative to United States Proposed Instruction No. 2)*

The defendant is charged in Counts One through Five of the superseding indictment with wire fraud in violation of Section 1343 of Title 18 of the United States Code.  In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant knowingly devised a scheme or plan to defraud or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

Fourth, the defendant used, or caused to be used, a wire communication to carry out or attempt to carry out an essential part of the scheme.

In determining whether a scheme to defraud exists, you may consider not only the defendant's words and statements, but also the circumstances in which they are used as a whole.

A wiring is caused when one knows that a wire will be used in the ordinary course of business or when one can reasonably foresee such use.

It need not have been reasonably foreseeable to the defendant that the wire communication would be interstate in nature.  Rather, it must have been reasonably foreseeable to the defendant that some wire communication would occur in furtherance of the scheme, and an interstate wire communication must have actually occurred in furtherance of the scheme.

//

4

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2       The defense objects to the government's Proposed Instruction No. 2 as it

3  relates to: (1) the phrasing of the first element, which includes theories of

4  commission not described in the first superseding indictment; and (2) the phrasing

5  of the third element—the defense proposes that "intent to defraud" be defined as

6  the intent to deceive *and* cheat, not deceive *or* cheat.

7       **1.     The first element**

8       Under the government's proposed instruction, the jury, as to the first

9  element, must find that "the defendant knowingly participated in, devised, or

10  intended to devise a scheme or plan to defraud . . . , or a scheme or plan for

11  obtaining money or property by means of false or fraudulent pretenses,

12  representations, or promises."[1]  The superseding indictment, however, states only

13  that Miller "devised, participated in and executed a scheme to defraud."  Dkt Item

14  25, at 2.  It does not use the "intended to devise" language.

15       The model instructions' suggested phrasing is, "the defendant knowingly

16  [participated in] [devised] [intended to devise] a scheme or plan to defraud," with

17  the bracketed text suggesting alternative phrasings to make the instruction match

18  the facts of the case.  *See* Manual of Model Criminal Jury Instructions for the

19  Ninth Circuit (2010 ed.), No. 8.124 [Wire Fraud]. Thus, the jury instruction should

20  reflect only the alleged theories of commission.   Mr. Miller proposes the following

21  modified language for the first element: "First, the defendant knowingly devised a

22  scheme or plan to defraud or a scheme or plan for obtaining money or property by

23  means of false or fraudulent pretenses, representations, or promises;"

24

25

26

27       [1] This quotation removes a phrase that appears to be a typographical error in the
28  government's proposed jury instruction.

5

### 2.    The third element

Mr. Miller's proposes that "intent to defraud" should be defined as the intent to deceive *and* cheat, not the intent to deceive *or* cheat, as worded in the Ninth Circuit's Model Criminal Jury Instructions 3.16 and 8.124. Under the model instructions' disjunctive phrasing, a person could be guilty of wire fraud if they merely had an intent to deceive, and did not possess an intent to cheat. In other words, it would be enough to intend to deceive the alleged victim without any intent to harm or injure her. For example, a person that misleadingly overstated her years of experience in a particular field in order to secure a job would have the requisite intent, notwithstanding that she knew that she had the necessary skills to give the hiring company its money's worth.

Such a definition of intent would broaden wire fraud to cover actions in which no injury was intended. This is at odds with the Supreme Court's basic definition of fraud: "The words 'to defraud' commonly refer to wronging one in his property rights by dishonest methods." *McNally v. United States*, 483 U.S. 350, 351 (1987) (superseded by statute only as to intangible right to honest services). Consistent with this basic definition, the Supreme Court has rejected government efforts to read the mail and wire fraud statutes to extend to deception without harm to the money or property of the alleged victim. For instance, in *Cleveland v. United States*, the Supreme Court examined "whether the federal mail fraud statute, 18 U.S.C. § 1341, reaches false statements made in an application for a state license." 531 U.S. 12, 15 (2000). The government in *Cleveland* alleged that defendant made false statements to the Louisiana State Police in order to obtain a video poker license. The false statements related to the nature of the ownership of the company that applied for the license. *Id.* at 370. The Supreme Court vacated defendant's conviction concluding that § 1341 "requires the object of the fraud to be 'property' in the victim's hands and that a Louisiana video poker license in the State's hands is not 'property' under § 1341." *Id.* at 374. In other

words, it was insufficient that defendant made deceitful statements about the company's ownership in the license application because the deceit was unconnected to loss of property. The government had no "property" to be cheated out of by means of the deceit.

In *Cleveland*, the government alternately argued that the mail fraud statute "defines two independent offenses: (1) 'any scheme or artifice to defraud' and (2) 'any scheme or artifice ... for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.'" *Id.* at 25. Under the government's theory in *Cleveland*, if a thing of value was ultimately obtained through false statements, the requirements for mail fraud were met under the second phrase cited above, even if the thing of value was not "property" in the hands of the state under the first phrase. *Id.* The Court rejected this argument, explaining that the two disjunctive phrases of § 1341 are not to be read independently, but rather "that the second phrase simply modifies the first by 'ma[king] it unmistakable that the statute reached false promises and misrepresentations as to the future as well as other frauds involving money or property.'" *Id.* at 26 (quoting *McNally*, 438 U.S. at 359). It then stated:

> Were the Government correct that the second phrase of § 1341 defines a separate offense, the statute would appear to arm federal prosecutors with power to police false statements in an enormous range of submissions to state and local authorities. For reasons already stated . . . we decline to attribute to § 1341 a purpose so encompassing where Congress has not made such a design clear.

*Id.; see also McNally*, 483 U.S. at 351, 358 (rejecting argument that the disjunctive phrasing defined two separate offenses, such that a person could be guilty of fraud without having deprived a victim of any money or property).

Thus, as explained in *Cleveland*, § 1341 does not reach deception without harm. An intent to defraud requires that the defendant intended some actual harm

or injury to his victim – i.e., that the defendant not only intended to deceive but, via the deceit, also to cheat his victim.

While the Supreme Court has been clear on this point, the circuits, including the Ninth Circuit, have been inconsistent as to the intent required by the statute. The majority of circuits have been explicit that the intent required by the mail and wire fraud statutes is the intent to both deceive and do harm, i.e. cheat.[2]  Others appear to conclude that deception is sufficient.[3]  At times the Ninth Circuit has properly described the intent requirement in the conjunctive.  *See, e.g.*, *United States v. Inzunza*, 638 F.3d 1006, 1019 (9th Cir. 2011) ("The jury found that Inzunza with 'an intent to deceive *and* cheat' entered into an agreement to repeal the No-Touch ordinance in return for campaign contributions.  The absence of a specific instruction on materiality [therefore] caused no injustice.") (emphasis added).  However, the Ninth Circuit's model instruction is stated in the disjunctive.

---

[2] *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987) ("Only a showing of intended harm will satisfy the element of fraudulent intent," and "[m]isrepresentations amounting only to a deceit are insufficient to maintain a mail or wire fraud prosecution."); *United States v. Russo*, 166 Fed.Appx. 654, at *3 (3d Cir. 2006) (upholding instruction that "intent to defraud means to act knowingly and with a specific intent to deceive for the purpose of causing some deprivation or loss to another of money, property, or honest services"); *United States v. Wynn*, 684 F.3d 473, 478 (4th Cir. 2012) ("[A] defendant must specifically intend to lie or cheat or misrepresent with the design of depriving the victim of something of value."); *United States v. Jimenez*, 77 F.3d 95, 97 (5th Cir.1996) ("Intent to defraud requires an intent to (1) deceive, and (2) cause some harm to result from the deceit."); *United States v. Daniel*, 329 F.3d 480, 488 (6th Cir.2003) ("We agree that the intent must be to injure or harm."); *United States v. Jain*, 93 F.3d 436, 441(8th Cir. 1996) ("the government must show that some actual harm or injury was contemplated by the schemer"); *United States v. Cochran*, 109 F.3d 660, 667-69 (10th Cir. 1997) (fraud statues require showing of fraudulent intent, which can be inferred from actual harm to the victims).

[3] *United States v. Henningsen*, 387 F.3d 585, 590 (7th Cir. 2004)(statute requires "specific intent to deceive or cheat" and recounting evidence of intent focusing solely on deception); *United States v. Bradley*, 644 F.3d 1213, 1239 (11th Cir. 2011)(stating "[a]ll that is necessary is that the scheme be reasonably calculated to deceive" but then appearing to invoke cheating by stating "To gauge a defendant's intent to commit a fraudulent scheme, then, we must determine whether the defendant attempted to obtain, by deceptive means, something to which he was not entitled").

8

Recent decisions have upheld the model instruction, treating deception and cheating as largely identical concepts by stretching the concept of harm past pecuniary loss to vaguer concepts like "depriving the victim of the opportunity to weigh the true benefits and risks of the transaction." *See United States v. Treadwell*, 593 F.3d 990, 997 (9th Cir. 2010); *see also United States v. Livingston*, 725 F.3d 1141, 1148 (9th Cir. 2013).

Because the disjunctive Ninth Circuit model instruction is at odds with the Supreme Court's holdings in *Cleveland* and *McNally*, it is incorrect.  *See Hunter v. County of Sacramento*, 652 F.3d 1225, 1232 (9th Cir. 2011) ("[A] district court's use of a model jury instruction does not preclude a finding of error.") (internal citations omitted).  Accordingly, the defense respectfully requests the conjunctive instruction.

**COURT'S INSTRUCTION NO. ___**

***DEFENSE PROPOSED INSTRUCTION NO. 3***

**(*proposed alternative to United States Proposed Instruction No. 7*)**

The proceeds of a loan are not taxable income.

Unlawfully obtained gains are taxable income in the year in which the gains were incurred.  Repayment of unlawfully obtained gains, however, reduces taxable income for the year by the amount of the repayment.  Thus, if unlawful income is repaid in a given year, then it need not be declared in a tax return for that year.

## MEMORANDUM OF POINTS AND AUTHORITIES

The government's proposed instruction, which is not a Ninth Circuit model instruction, is confusing and one-sided as currently written.  Perhaps most obviously, the government's wording begs the question of what constitutes embezzlement in the legal sense, since there is no instruction defining embezzlement.  The proposed instruction is biased in that it tells the jury what is taxable income without giving them equally important and necessary information as to what is not taxable income. The defense proposes a more complete, less confusing alternative instruction based on the same Supreme Court case, *James v. United States*, 366 U.S. 213, 219-20 (1961), cited by the government.

## COURT'S INSTRUCTION NO. ___

### *DEFENSE PROPOSED INSTRUCTION NO. 4*

The superseding indictment alleges that defendant executed a scheme to defraud MWRC and various financial institutions.

In order for the government to prove that defendant is guilty of wire fraud, the government must prove that each of the elements of wire fraud is met with regard to a particular victim. To give an example, the government cannot prove that defendant defrauded MWRC by making false statements to a different entity, such as a bank. Similarly, to prove wire fraud as to MWRC, the government must prove that defendant's intent was to defraud MWRC, rather than another entity.

12

## MEMORANDUM OF POINTS AND AUTHORITIES

The superseding indictment alleges in Counts One through Five that Mr. Miller "knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud MWRC and various banks and financial institutions."  Dkt. Item 25 at 2.  This blending of victims raises the specter of conviction on an impermissible legal theory foreclosed by Ninth Circuit precedent.

Consistent with Supreme Court precedent, the Ninth Circuit requires that the allegedly fraudulent conduct must be directed at the same person or entity whose property is the object of the alleged fraud: in other words, "the intent must be to obtain money or property from the one who is deceived."  *United States v. Lew*, 875 F.2d 219, 221 (9th Cir.1989); *see also Cleveland*, 531 U.S. at 15 (for purposes of fraud statutes, "the thing obtained must be property in the hands of the victim"). *Lew* involved an attorney who was convicted of mail fraud for filing false applications for employment certification forms with the government on behalf of his alien clients.  The Ninth Circuit overturned the conviction on the basis that the attorney did not obtain money from the party allegedly deceived (the government), but rather from his clients, for whom there was no evidence of deception by him. Thus, if Mr. Miller misled the banks and as a result obtained property belonging to MWRC, that would not meet the requirements of the wire fraud statute.  Rather, to be guilty of fraud, he would need to have either deceived the bank with the object of obtaining the bank's property, or deceived MWRC with the object of obtaining MWRC's property.  Thus, the elements of scheme, misrepresentation, and intent must all align with respect to an individual alleged victim. The proposed instruction seeks to explain this requirement to the jury.

## II. OBJECTIONS TO PROPOSED GOVERNMENT INSTRUCTIONS FOR WHICH THE DEFENSE SEEKS NO ALTERNATIVE

**A.    Objection to United States Proposed Instruction No. 3**

The government's proposed instruction is unnecessary and repetitive.  Intent is defined in the third element of both the government and the defense's Proposed Instruction No. 2, and it is unclear why an additional and separate instruction stated in exactly the same terms should be necessary.  If the Court determines that a separate instruction is required, the instruction should, for the reasons discussed above, read: "An intent to defraud is an intent to deceive and cheat."

**B.    Objection to United States Proposed Instruction No. 4**

This instruction, which is not a Ninth Circuit model instruction, is unnecessary.  Joint Proposed Instruction No. 13 already explains to the jury that each count alleges a separate crime and that each count must be decided separately.  Dkt. Item 79 at 18.  Thus, no instruction is necessary to tell jurors that the separate wirings may be separate violations of the statute.

**C.    Objection to United States Proposed Instruction No. 5**

This instruction, which is not a Ninth Circuit model instruction, is unnecessary and misstates the case law. Neither of the cases cited by the government mentions the word "profit" at any point, and neither suggests that evidence that a defendant earned a profit can be used to prove fraud.  Instead, the insight of these cases is simply that fraud does not necessarily require the extraction of additional monies from an alleged victim, but instead includes the misuse of money already in the defendant's care.  *See United States v. Jones*, 472 F.3d 1136, 1139-40 (9th Cir. 2007); *United States v. Rubin*, 522 F.3d 967, 974 (9th Cir. 2008).

**D.    Objection to United States Proposed Instruction No. 6**

This instruction, which is not a Ninth Circuit model instruction, is unnecessary, argumentative, and may mislead or confuse the jury.  The instruction

invokes three separate concepts related to the alleged victim – gullibility, negligence, and foolishness. The two Ninth Circuit cases cited by the government, *United States v. Ciccone*, 219 F.3d 1078, 1083 (9th Cir. 2000), and *United States v. Hanley*, 190 F.3d 1017, 1023 (9th Cir. 1999), only touch upon the first concept, but not in the circumstances present here. The opinions discuss whether, to prove a defendant's specific intent, the government must prove that a scheme was calculated to deceive persons "of ordinary prudence and comprehension." 219 F.3d at 1083; 190 F.3d at 1023. The cases do not discuss whether the jury needs to be instructed on the subject. In any case, gullibility is hardly a concern here, where the alleged target of the deception, Russell Lesser, is a sophisticated businessman and certified public accountant.

The concept of negligence not being a defense to fraud comes from the Fifth Circuit, and was adopted by the Third Circuit, in the cases cited by the government. But it has not been adopted by the Ninth Circuit in the intervening 35 years, possibly because it presents a strong chance of confusing or misleading the jury. An alleged victim's negligence may go to whether or not there was a fraud. For instance, if a defendant has provided an alleged victim with complete information about his activities, but the alleged victim did not bother to review that information, he cannot later claim to have been misled. The instruction appears to allow the government to argue that the jury should disregard disclosures by the defendant that the alleged victim ignored.

"Foolishness" does not appear in any case cited by the government, with good reason. "Foolishness" could mean almost anything. For instance, it would be foolish for an alleged victim to focus on the optimistic statements of a defendant about a risky venture while ignoring the disclaimers, but that would not render the pitch fraudulent. It might be foolish to pay the prices requested by certain artists for their work; but again, the alleged victim's foolishness does not mean that he

15

has been defrauded.  Because it is unclear what the jury would take from being so instructed, this instruction should not be given.

**E.      Objection to United States Proposed Instruction No. 8**

The requested instruction is unnecessary.  Neither the Ninth Circuit model instructions nor the O'Malley et al. section cited by the government actually contain this requested instruction.  Moreover, Joint Proposed Instruction No. 26 outlines the elements of the offense for the jury.  Having just heard that the elements of the offense, the jury will not need to be told what elements are not included in the offense.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED:  November 15, 2016.      By   /s/ *Sonam Henderson*

SONAM HENDERSON
CUAUHTEMOC ORTEGA
Deputy Federal Public Defenders
Attorneys for JAMES ROBERT MILLER

16